**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| MIDNIGHT EXPRESS POWER BOATS, INC.<br>Plaintiff,<br>v.<br><br>GABCO HOLDINGS, LLC, GREGORY KILEY, and MICHAEL NEWCOMER.<br>Defendants. | ) | Case No. |

## COMPLAINT

Plaintiff, MIDNIGHT EXPRESS POWER BOATS, INC., a Delaware Corporation ("Plaintiff" or "Midnight Express"), by and through undersigned counsel, files this Complaint against Gabco Holdings, LLC, Gregory Kiley, and Michael Newcomer ("Defendants") and alleges as follows:

## INTRODUCTION

1. This is an action under the Lanham Act, 15 U.S.C. § 1051 et seq., for cybersquatting in violation of 15 U.S.C. § 1125(d), infringement of a federally registered trademark in violation of 15 U.S.C. § 1114, and false designation of origin in violation of 15 U.S.C. § 1125(a).

2. Midnight Express has been and continues to be one of the most respected builders of luxury high-performance boats in the United States. It has been described as "one of the preeminent performance-boat companies in the world," provides boats for U.S. government agencies, and has been featured in well-known national publications.

[remainder of page left intentionally blank]




*The above photo, featuring a Midnight Express vessel is a cover photo for a Forbes article, titled: "The World's Best…Yachts Are On Display in Miami This Weekend"*

3. Gabco Holdings, LLC (of which Gregory Kiley is a principal) and Michael Newcomer are adverse to Midnight Express in separate lawsuits, each instituted in 2024, generally concerning a single Midnight Express vessel.

4. In late August 2026, Defendants launched a campaign calculated to intercept consumers, dealers, brokers, and others searching for Midnight Express and to divert them to content designed to tarnish Midnight Express's trademark and goodwill.

**PARTIES**

5. Plaintiff, Midnight Express Power Boats, Inc., is a Delaware corporation with its principal place of business at 351 NE 185th St, Miami, FL 33179.

6. Defendant, Gabco Holdings, LLC ("Gabco"), is an Ohio Limited Liability Company with its principal place of business in Holland, Ohio.

7. Gabco's principal shareholder resides in Miami-Dade County, Florida.

8. Defendant, Gregory Kiley, is a resident of Miami-Dade County, Florida, and is the operator and driving force behind Gabco and its operations (including the infringement and unlawful acts alleged herein).

9. The unlawful acts of Defendant Gabco, as alleged below, were done with full knowledge of Defendant Gregory Kiley, who is personally liable because he directed, controlled, ratified, and participated in those unlawful acts, and was (and still is) the driving force behind those acts; furthermore, Defendant Gregory Kiley directly profited from and/or had a pecuniary interest in the unlawful acts alleged herein.

10. Defendant, Michael Newcomer, is a resident of Miami-Dade County, Florida. In a prior proceeding brought by Gabco (Case No. CACE-24-007163 and Case No. 24-cv-21823), Gabco previously represented that Michael Newcomer is an "agent" and "representative" of Gabco.

## JURISDICTION

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 15 U.S.C. § 1121, because the claims arise under the Lanham Act, 15 U.S.C. § 1051 et seq. This Court also has supplemental jurisdiction, as set forth in 28 U.S.C. § 1367.

12. This Court has personal jurisdiction over Gregory Kiley because he is domiciled in and resides in the State of Florida.

13. This Court has personal jurisdiction over Michael Newcomer because he is domiciled in and resides in the State of Florida.

14. Gabco is also subject to personal jurisdiction in Florida and in this District by virtue

of at least the following:

a. Gabco operates, conducts, engages in, or carries on a business or business venture in this State, and the Southern District of Florida, within the meaning of Fla. Stat. § 48.193(1)(a);

b. Gabco is engaged in substantial and not isolated activity within this State, and the Southern District of Florida, within the meaning of Fla. Stat. § 48.193(2).

c. This action arises from, *inter alia*, acts that, upon information and belief, occurred within this State, specifically Gabco's commission of tortious acts, including the infringement set forth herein, within the meaning of Fla. Stat. § 48.193(1)(a). This includes causing injury to Midnight Express's property, namely, its trademarks, as set forth in more detail below, within this State and the Southern District of Florida, arising out of acts or omissions by Gabco while, at or about the time of injury, Gabco was either operating within this State, or, if it was operating outside of this State, Gabco was engaged in solicitation or service activities within this State within the meaning of Fla. Stat. § 48.193(1)(a)(6)(a).

15. Gabco meets with its customers and business associates in this State and in this District for the purpose of generating business or maintaining existing business relationships.

16. Gregory Kiley meets with his customers and business associates in this State and in this District for the purpose of generating business.

17. Since at least April 2020, Gregory Kiley has been meeting with his customers and business associates in this State for the purpose of generating business or maintaining existing business relationships.

## VENUE

18. Venue is proper as to Gregory Kiley under 28 U.S.C. § 1391(b)(1) because he resides in this District.

19. Venue is proper as to Michael Newcomer under 28 U.S.C. § 1391(b)(1) because he resides in this District.

20. Venue is proper as to Gabco under 28 U.S.C. § 1391(b)(1) because Gabco is deemed to reside in this District pursuant to 28 U.S.C. § 1391(c)(2) and (d), as Gabco is subject to personal jurisdiction in this District with respect to this action for the reasons set forth above in paragraphs 14 and 15.

21. Venue is additionally proper as to all Defendants under 28 U.S.C. § 1391(b)(3) because one or more of the Defendants is subject to this Court's personal jurisdiction with respect to this action, making the Southern District of Florida a "judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

22. Venue is additionally proper as to all Defendants under 28 U.S.C. § 1391(b)(2) because, as described in more detail below, a substantial part of the events giving rise to the claims occurred in this District.

## MIDNIGHT EXPRESS'S TRADEMARKS AND WEBSITE

23. Since at least as early as June 1996, and long prior to the acts of the Defendants complained of herein, Midnight Express and/or its predecessors adopted and continuously used in U.S. commerce its well-known "MIDNIGHT EXPRESS" mark (the "Midnight Express Mark") in connection with boats.

24. Midnight Express owns and enjoys common law trademark rights in its Midnight Express Mark based on use of the mark in commerce. Midnight Express also owns U.S. Serial No. 50/107,378 for its Midnight Express Mark, which lists the following goods and services: a. boats; and b. providing consumer information in the field of boats, watercraft, and marine vessels via a website.

25. Midnight Express also owns a federal registration for a special form trademark, featuring the Midnight Express Mark, namely, U.S. Registration No. 3,614,454 for MIDNIGHT EXPRESS as depicted in its special form (the "Registered Mark"). Midnight Express's right to use the Registered Mark has become incontestable in accordance with Sections 15 and 33(b) of the Lanham Act, 15 U.S.C. §§ 1065 and 1115(b). See Exhibit A, which is a current title and status copy of the registration from the United States Patent and Trademark Office.

26. Midnight Express has generated a substantial amount of goodwill and consumer recognition in both its Midnight Express Mark and the Registered Mark.

27. Since long prior to the acts of the Defendants complained of herein, Midnight Express and/or its predecessors have expended substantial money, time, and effort in advertising, promoting, and marketing the goods bearing the Midnight Express Mark and the Registered Mark.

28. The Midnight Express Mark and the Registered Mark are entitled to protection, and have been distinctive since their first use. Those marks are distinctive because they have become associated, over more than two decades, with Plaintiff's products and services. The name MIDNIGHT EXPRESS has a primary significance in the public mind with Plaintiff, and Plaintiff has used the MIDNIGHT EXPRESS name continuously and substantially exclusively for longer than two decades. Moreover, MIDNIGHT EXPRESS is, and has always been, the dominant portion of the Midnight Express Mark and the Registered Mark, and is recognized as such by customers and the public.

29. Since at least April of 2006, Midnight Express has owned and operated a website at the domain name www.midnightboats.com, which markets, advertises, and features its goods and services in connection with its Midnight Express Mark and the Registered Mark; as shown below, potential customers can even "design their Midnight Express" boat on the Plaintiff's

website:




30. Plaintiff's website garners hundreds of thousands of views each year, with 2025 alone garnering over six hundred thousand (600,000) views, and customers regularly contact the Plaintiff through its website for purposes of acquiring information about and purchasing the Plaintiff's goods and services.

31. As a testament to its distinctive mark and the high quality of goods and services that it provides, Plaintiff's Instagram page has garnered nearly 500,000 "followers," as shown below:




32. Midnight Express has regularly displayed and exhibited its boats at the world-renowned "Miami International Boat Show," the Palm each International Boat Show, which is a cornerstone of South Florida's boating and marine industry, as well as the annual "Fort Lauderdale International Boat Show," which is the world's largest in-water boat show:







**<u>FACTUAL BACKGROUND AND GENERAL ALLEGATIONS</u>**

33. Upon information and belief, since April 2020, Gabco has owned and operated an Instagram account having the username "@thebeastsixty" (the "Instagram Account").

34. In the alternative, and upon information and belief, Gregory Kiley has owned and operated the Instagram Account since April 2020, as some comments on Instagram posts made by the Instagram Account attribute ownership of the Instagram Account and Vessel to Gregory Kiley.

35. In the alternative, and upon information and belief, Michael Newcomer has owned and operated the Instagram Account since April 2020, as some comments on Instagram posts made by the Instagram Account attribute ownership of the Instagram Account and Vessel to Michael Newcomer.

36. From April 2020 to November 2024, the Instagram Account primarily featured photos and videos of a single Midnight Express vessel (the "Vessel" or "The Beast"), mainly showcasing the Vessel as an object of admiration, with accompanying captions that consistently

praised the Vessel's qualities and performance characteristics, thereby presenting the Vessel to the platform's audience as superior to competing models.

37. In one Instagram post from the Instagram Account, the post featured the Vessel with the caption "Floating through the weekend on The Beast can't compare to anything!! @midnightexpressboats makes the best center consoles hands down!!" The below being a screen capture of the Instagram post:




38. In other posts from the Instagram Account, the Vessel is described as having exceptional quality, and displaying high performance:

[remainder of page left intentionally blank]







39. However in May of 2024, notably *four years after* the Vessel was purchased from the Plaintiff, Gabco instituted a suit against Midnight Express in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida (Case No. CACE-24-007163), generally complaining of alleged issues Gabco and Gregory Kiley had with the Vessel (the issues forming a "business dispute"), and describing some interactions between Gregory Kiley, Michael Newcomer, Gabco, and Midnight Express (the "Ongoing Case").

40. On November 16, 2024, Michael Newcomer instituted a suit against Midnight Express in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida (Case No. CACE-24-016537), generally complaining that in December 2020, Michael Newcomer allegedly slipped and fell while descending cabin stairs of the Vessel ("Newcomer's Dismissed Case").

41. On November 19, 2024, the Instagram Account posted a video expressing negative opinions about the Vessel and Midnight Express.

42. Yet on February 3, 2025, the Instagram Account once again posted content showcasing the Vessel as an object of admiration.

43. From May 2024 through approximately July 2026, the Ongoing Case and Newcomer's Dismissed Case proceeded in the ordinary course, during which the Circuit Court dismissed Newcomer's Dismissed Case in July 2025, which was appealed by Michael Newcomer.

44. In July of 2026, the Fourth District Court of Appeal affirmed the dismissal of the Circuit Court in Newcomer's Dismissed Case.

45. On August 21, 2026, the Instagram Account displayed three separate posts containing defamatory and disparaging statements (and related content) about the Vessel and Midnight Express; one post unlawfully used the Registered Mark, and each post unlawfully used the Midnight Express Mark.

46. On August 26, 2026, Gabco filed its third amended complaint in the Ongoing Case.

47. On August 27, 2026, the Instagram Account displayed another post noting that one of the aforementioned August 21, 2026 Instagram posts (the "Disparaging Instagram Post") garnered, at minimum, over 300,000 views, and made an offer to pay $1,000.00 U.S. Dollars to anyone who guessed closest to the number of views the Disparaging Instagram Post would receive by October 1, 2026.

48. On September 1, 2026, the Instagram Account displayed another post directing users to visit the Internet domain name "www.midnightexpressboat.com" (the "Infringing Domain Name"), stating "COME VISIT OUR NEW WEBSITE!" alongside a listing of the Infringing Domain. The Instagram Account's biography also lists the Infringing Domain Name.




49. In late August 2026 or on September 1, 2026, the Defendants published a website with defamatory and disparaging content at the Infringing Domain Name (the "Infringing Website").

50. Upon information and belief, in late August 2026, Gabco (acting through Gregory Kiley and Michael Newcomer) purchased and registered the Infringing Domain Name, and Gabco owns, operates, manages, and controls the Infringing Website at the Infringing Domain Name.

51. In the alternative, and upon information and belief, Gregory Kiley purchased and registered the Infringing Domain Name in late August 2026, and Gregory Kiley owns, operates, manages, and controls the Infringing Website at the Infringing Domain Name.

52. In the alternative, and upon information and belief, Michael Newcomer purchased and registered the Infringing Domain Name in late August 2026, and Michael Newcomer owns, operates, manages, and controls the Website at the Infringing Domain Name.

53. The Infringing Domain Name incorporates the Midnight Express Mark in its entirety, the literal element of the Registered Mark, and adds only the generic term "boat," which describes the goods in connection with which Midnight Express uses the Midnight Express Mark and the Registered Mark.

54. The Infringing Domain Name is identical to or confusingly similar to the Midnight Express Mark and the literal element of the Registered Mark.

55. A visitor to the Infringing Website is first presented with a masthead prominently displaying the Midnight Express Mark, rendered in large, stylized capital letters over video footage, the video being a moving statement, reading "Don't Trust Midnight Express":

56. The Infringing Website further states: "WHILE CLIENTS RISK THEIR LIVES ON BROKEN BOATS, MIDNIGHT EXPRESS FUNDED THEIR NEXT BINGE DRINKING PARTY WITH YOUR REPAIR BUDGET[,]" alongside video footage generally depicting patrons in minimal attire dancing on boats. The video footage also contains three "clips" (of many "clips") purporting to identify the "owner of Midnight [Express,]" despite never depicting this individual as "binge drinking."

57. Midnight Express has never authorized Defendants to register or use the Infringing Domain Name, or to use the Midnight Express Mark or the literal element of the Registered Mark within the Infringing Domain Name, on the Infringing Website, or on any Internet domain name or website.

58. Because the Infringing Domain Name and the Infringing Website contain content

displaying and unlawfully using the Midnight Express Mark and/or the literal element of the Registered Mark and the generic name of Midnight Express's goods, it is highly likely that consumers, dealers, brokers, and others searching for Midnight Express may encounter the Infringing Domain Name, the Infringing Website, and the Plaintiff's Midnight Express Mark as falsely and deceptively portrayed by Defendants.

59. Midnight Express's goods are largely popularized on the Internet, where customers gain substantial information related to Midnight Express's goods through its website at midnightboats.com, among other Internet sources. That website and Internet sources generate substantial business for Midnight Express and allow it to maintain a relationship with its customers.

60. Despite knowing full well of Plaintiff and the Midnight Express Mark, Defendants have willfully committed acts of infringement by using the Midnight Express Mark with the intention of harming the Plaintiff's brand, and diverting customers who would have otherwise purchased Midnight Express's products.

61. Despite knowing full well of Plaintiff's Registered Mark, Defendants have willfully committed acts of infringement by using the Registered Mark with the intention of harming the Plaintiff's brand, and diverting customers who would have otherwise purchased Midnight Express's products.

62. When an Internet user looking for Midnight Express's website mistakenly enters the Infringing Website at the Infringing Domain Name, that user has thus been diverted from Midnight Express's website. If it is a new visitor, Midnight Express has lost the opportunity to transact business with that visitor. If it is a user of Midnight Express's goods and services, that user may not return to use Midnight Express's goods and services in the future after visiting the

Infringing Website at the Infringing Domain Name.

63. By purchasing, registering, trafficking in, and using the Infringing Domain Name, and as evidenced by the content displayed on the Infringing Domain Name, the Defendants have engaged in a bad faith intent to profit from the Plaintiff's Midnight Express Mark and the Registered Mark, as the Defendants' extortionate use is sufficient to constitute a bad faith intent to profit.

64. The Defendants purchased, registered, trafficked in, and used the Infringing Domain Name in an attempt to procure an advantageous gain or advantage relative to the Ongoing Case.

65. The Defendants' bad faith intent to profit is also evidenced by the fact that:

a. Defendants Have No Intellectual Property Rights. The Defendants have no trademark or intellectual property rights in the Infringing Domain Name. Moreover, per the United States Patent and Trademark Office, no Defendant owns any intellectual property.

b. The Infringing Domain Name Does not Consist of the Defendants' Legal Names. The Infringing Domain Name does not consist of any of the Defendants' legal names.

c. No Prior Use. The Defendants do not have prior rights/use of the Infringing Domain Name.

d. No Noncommercial Use. The Defendants are not making a bona fide non-commercial use of the Plaintiff's Midnight Express Mark and the Registered Mark through the Infringing Domain Name.

e. Intent to Divert Consumers. The Defendants intended to divert consumers from the Plaintiff's business and website, both for the Defendants' gain and advantage, as well as to tarnish the Plaintiff's brand, by creating a likelihood of confusion concerning source, sponsorship,

affiliation, or endorsement. As described above, the Instagram Account directs its patrons to visit www.midnightexpressboat.com via a post and lists the Infringing Domain in the Instagram Account's biography as a clickable link.

f. Transferring, Selling, or Assigning the Infringing Domain Name. Upon information and belief, and whether through the Ongoing Case or otherwise, the Defendants intend to sell, assign, or otherwise exploit the Infringing Domain Name without having used the Infringing Domain Name in a boda fide offering of goods or services.

g. False Registration Information. The Defendants provided false information and/or intentionally concealed the true and accurate information pertaining to the registrant and owner of the Infringing Domain Name. The Defendants registered the Infringing Domain Name using an agent and proxy, Domains by Proxy, LLC, which is a company based in Arizona that registers a domain on behalf of its true owner. The Defendants are the true or de facto registrants of the Infringing Domain Name or, in the language of 15 U.S.C. § 1115(a), the authorized licensees of Domains by Proxy, LLC, the official, de jure registrants of the domain.

h. Distinctiveness of the Plaintiff's Mark. As alleged throughout this Complaint, the Plaintiff's Midnight Express Mark and the Registered Mark (which are incorporated into the Infringing Domain Name) are highly distinctive under the Lanham Act. To be sure, the Plaintiff's Registered Mark has become incontestable in accordance with Sections 15 and 33(b) of the Lanham Act, 15 U.S.C. §§ 1065 and 1115(b).

66. Defendants also registered the Infringing Domain Name in reckless disregard of Plaintiff's trademarks and intellectual property. The Defendants were well aware of Plaintiff's long use of Midnight Express Mark, Plaintiff's trademark rights, and the similarities between Plaintiff's trademarks and the Infringing Domain Name, and that the Infringing Domain Name

would dilute Plaintiff's goodwill and divert customers.

67. The Defendants have, and are continuing to, profit off of the goodwill of Plaintiff (the owner of the Midnight Express Mark and Registered Mark), and in doing so, have diluted the goodwill of Plaintiff.

68. Along these lines, on September 14, 2026, the Instagram Account displayed yet another post with the statement "WANT A CHANCE TO WIN $1000 SWIPE RIGHT FOR MORE INFO[,]" prompting viewers to comment on the post with a new name for the Vessel, noting that the name should be predicated, at least in part by "all of the information available on our website."

69. The Defendants' use of the Plaintiff's Midnight Express Mark and Registered Mark through the Infringing Domain Name constitutes a commercial use because the Defendants' actions are designed to (and do) harm the Plaintiff commercially.

70. The Defendants' use of the Plaintiff's Midnight Express Mark and Registered Mark through the Infringing Domain Name is commercial because of its effect on Plaintiff's business; the Defendants have misappropriated the Plaintiff's Midnight Express Mark and Registered Mark in order to reach an audience of Internet users who are interested in the Plaintiff and its related goods and services, and the Defendants want to intercept those users (and to mislead them) in an attempt to damage the Plaintiff's brand and to decrease the Plaintiff's sales.

71. The Defendants' misappropriation is classically competitive, as they have taken and misused the Plaintiff's Midnight Express Mark and Registered Mark as their own in order to push their own website (*i.e.* the Infringing Domain Name) to an audience intending to access the Plaintiff's goods and services.

72. Prospective customers of the Plaintiff's goods and services who mistakenly access

the Infringing Domain Name may fail to continue to search for Plaintiff's own website due to anger or frustration, or even the belief that the Plaintiff's website does not exist or has otherwise been hijacked or taken over by the Defendants.

73. The Defendants' acts of cybersquatting have therefore been committed with the intent to cause confusion, mistake, and to deceive, and were otherwise deliberate and/or in bad faith. Such intentional and willful conduct makes this an exceptional case.

74. Plaintiff has no adequate remedy at law. Plaintiff has suffered irreparable harm and will continue to suffer irreparable injuries unless the Defendants are enjoined from continuing to exploit, use, and cybersquat upon the Infringing Domain Name, or any other domain name controlled by any Defendant that begins with "MIDNIGHT," ends with "EXPRESS," or otherwise makes a colorable imitation of Plaintiff's Midnight Express Mark.

75. Plaintiff is entitled to injunctive relief in accordance with 15 U.S.C. § 1116, and is entitled to recover profits and damages as set forth in 15 U.S.C. § 1117.

76. Plaintiff is entitled to recover its attorneys' fees pursuant to 15 U.S.C. § 1117(a).

77. As set forth in 15 U.S.C. §1125(c), the Court may order the Infringing Domain Name, or any other domain name controlled by any Defendant that begins with "MIDNIGHT" to be transferred to Plaintiff. In the alternative, the Court may order the forfeiture or cancellation of the Infringing Domain Name, or any other domain name controlled by any Defendant that begins with "MIDNIGHT."

78. Plaintiff has no adequate remedy at law.

[remainder of page left intentionally blank]

**COUNT I**
**CYBERSQUATTING UNDER THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT – 15 U.S.C. § 1125(d)**
**[Against Gabco]**

79. Midnight Express incorporates herein each and every allegation set forth in Paragraphs 1 through 78 as if fully set forth herein.

80. Midnight Express's Midnight Express Mark and Registered Mark are distinctive and were distinctive before Gabco registered the Infringing Domain Name.

81. The Infringing Domain Name is either identical to or confusingly similar to Midnight Express's Midnight Express Mark and the literal element of the Registered Mark.

82. Gabco intentionally registered, acquired, trafficked in, and used the Infringing Domain Name, including to divert consumers, dealers, brokers, and others searching for Midnight Express away from Midnight Express's website and internet presence to the Infringing Website, either for commercial gain or with the intent to tarnish or disparage the Midnight Express Mark and the Registered Mark, and created a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Infringing Website at Infringing Domain Name.

83. Gabco's registration and use of the Infringing Domain Name is intended primarily to capitalize on the goodwill associated with Midnight Express's Midnight Express Mark and Registered Mark, including by using the Infringing Domain Name and the Infringing Website to injure Midnight Express's goodwill and to pressure Midnight Express in connection with the business dispute, thereby to extract from Midnight Express concessions and other things of value.

84. Gabco registered, acquired, trafficked in, and used the Infringing Domain Name with a bath faith intent to profit from the Midnight Express Mark and the Registered Mark and their associated goodwill.

85. Gabco's diversion of traffic from Midnight Express's website has harmed and

continues to harm Midnight Express's ability to generate business and retain customers.

86. Gabco's registration, acquisition, trafficking in, and use of the Infringing Domain Name has caused and will continue to cause damage to Midnight Express, in an amount to be proven at trial, and is causing irreparable harm to Midnight Express, for which there is no adequate remedy at law.

87. As a direct and proximate result of Gabco's violation of the ACPA, Plaintiff has suffered and continues to suffer injury to its business, reputation, goodwill, and property rights, and Gabco has obtained and/or sought to obtain an improper commercial benefit from Plaintiff's Mark.

88. Pursuant to 15 U.S.C. § 1117(d), Plaintiff is entitled to statutory damages in an amount determined by the Court, as the Court considers just.

89. Plaintiff is also entitled to appropriate equitable relief under 15 U.S.C. § 1125(d), including an order transferring the Infringing Domain Name to Plaintiff, together with such other relief as the Court deems just and proper.

WHEREFORE, Midnight Express requests that the Court grant the relief requested in the Prayer for Relief below.

**COUNT II**
**FEDERAL TRADEMARK INFRINGMENT – 15 U.S.C. § 1114**
**[Against Gabco]**

90. Midnight Express incorporates herein each and every allegation set forth in Paragraphs 1 through 78 as if fully set forth herein.

91. The Registered Mark, and the literal element thereof are distinctive, associated with Midnight Express, and identifies Midnight Express as the source of its boats. The Registered Mark was distinctive and signified Midnight Express as the source of its boats before Gabco registered

the Infringing Domain, and the Registered Mark is incontestable and constitutes conclusive evidence of its validity and of Midnight Express's exclusive right to use it in commerce.

92. Gabco has used and continues to use in commerce, without Midnight Express’s consent, reproductions, copies, and colorable imitations of the Registered Mark, including the literal element thereof, that constitutes the dominant feature of the Registered Mark, in the Infringing Domain Name, in the title of the Infringing Website, in the masthead and content of the Infringing Website, and on the Instagram Account such that the use is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the Domain Name, Infringing Website, or Instagram Account.

93. Gabco’s use of the Registered Mark and its literal element is also likely to cause initial interest confusion among consumers and potential consumers of Midnight Express's boats, who are drawn to the Infringing Domain Name and the Infringing Website by the Registered Mark before encountering the Infringing Website's disparaging content.

94. Gabco’s use of the Registered Mark and its literal element constitutes trademark infringement under 15 U.S.C. § 1114.

95. Gabco’s infringement is intentional and willful.

96. Gabco’s intentional and willful infringement has caused, and will continue to cause, damage to Midnight Express in an amount to be proven at trial, and is causing irreparable harm to Midnight Epxress for which there is no adequate remedy at law.

WHEREFORE, Midnight Express requests that the Court grant the relief requested in the Prayer for Relief below.

**COUNT III**
**UNFAIR COMPETITION – 15 U.S.C. § 1125(a)**
**[Against Gabco]**

97. Midnight Express incorporates herein each and every allegation set forth in Paragraphs 1 through 78 as if fully set forth herein.

98. Gabco's use in commerce of the Registered Mark and the literal element thereof, which constitutes the dominant feature of the Registered Mark, is likely to cause confusion, or to cause mistake, or to deceive the relevant public into believing that the Infringing Domain Name, the Infringing Website, and content displayed thereon are authorized, sponsored, or approved by Midnight Express.

99. The above acts of Gabco constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

100. As a direct and proximate cause of Gabco's acts of unfair competition, Midnight Express has suffered and will continue to suffer irreparable loss of income, profits, and goodwill.

101. Gabco's acts of unfair competition will cause further irreparable injury to Midnight Express if Gabco is not restrained by this Court from further violation of Midnight Express's rights. Midnight Express has no adequate remedy at law.

WHEREFORE, Midnight Express requests that the Court grant the relief requested in the Prayer for Relief below.

**COUNT IV**
**CYBERSQUATTING UNDER THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT – 15 U.S.C. § 1125(d)**
**[Against Gregory Kiley]**

102. Midnight Express incorporates herein each and every allegation set forth in Paragraphs 1 through 78 as if fully set forth herein.

103. Midnight Express's Midnight Express Mark and Registered Mark are distinctive

and were distinctive before Gregory Kiley registered the Infringing Domain Name.

104. The Infringing Domain Name is either identical to or confusingly similar to Midnight Express's Midnight Express Mark and the literal element of the Registered Mark.

105. Gregory Kiley intentionally registered, acquired, trafficked in, and used the Infringing Domain Name to divert consumers, dealers, brokers, and others searching for Midnight Express away from Midnight Express's website and internet presence to the Infringing Website, either for commercial gain or with the intent to tarnish or disparage the Midnight Express Mark and the Registered Mark, and created a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Infringing Website at Infringing Domain Name.

106. Gregory Kiley's registration and use of the Infringing Domain Name is intended primarily to capitalize on the goodwill associated with Midnight Express's Midnight Express Mark and Registered Mark, including by using the Infringing Domain Name and the Infringing Website to injure Midnight Express's goodwill and to pressure Midnight Express in connection with the business dispute, thereby to extract from Midnight Express concessions and other things of value.

107. Gregory Kiley registered, trafficked in, and used the Infringing Domain Name with a bath faith intent to profit from the Midnight Express Mark and the Registered Mark and their associated goodwill.

108. Gregory Kiley's diversion of traffic from Midnight Express's website has harmed and continues to harm Midnight Express's ability to generate business and retain customers.

109. Gregory Kiley's registration, acquisition, trafficking in, and use of the Infringing Domain Name has caused and will continue to cause damage to Midnight Express, in an amount to be proven at trial, and is causing irreparable harm to Midnight Express, for which there is no adequate remedy at law.

110. As a direct and proximate result of Gregory Kiley's violation of the ACPA, Plaintiff has suffered and continues to suffer injury to its business, reputation, goodwill, and property rights, and Gregory Kiley has obtained and/or sought to obtain an improper commercial benefit from Plaintiff's Mark.

111. Pursuant to 15 U.S.C. § 1117(d), Plaintiff is entitled to statutory damages in an amount determined by the Court, as the Court considers just.

112. Plaintiff is also entitled to appropriate equitable relief under 15 U.S.C. § 1125(d), including an order transferring the Infringing Domain Name to Plaintiff, together with such other relief as the Court deems just and proper.

WHEREFORE, Midnight Express requests that the Court grant the relief requested in the Prayer for Relief below.

**COUNT V**
**FEDERAL TRADEMARK INFRINGMENT – 15 U.S.C. § 1114**
**[Against Gregory Kiley]**

113. Midnight Express incorporates herein each and every allegation set forth in Paragraphs 1 through 78 as if fully set forth herein.

114. The Registered Mark, and the literal element thereof are distinctive, associated with Midnight Express, and identifies Midnight Express as the source of its boats. The Registered Mark was distinctive and signified Midnight Express as the source of its boats before Gregory Kiley registered the Infringing Domain, and the Registered Mark is incontestable and constitutes conclusive evidence of its validity and of Midnight Express's exclusive right to use it in commerce.

115. Gregory Kiley has used and continues to use in commerce, without Midnight Express's consent, reproductions, copies, and colorable imitations of the Registered Mark, including the literal element thereof, that constitutes the dominant feature of the Registered Mark,

in the Infringing Domain Name, in the title of the Infringing Website, in the masthead and content of the Infringing Website, and on the Instagram Account such that the use is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the Domain Name, Infringing Website, or Instagram Account.

116. Gregory Kiley's use of the Registered Mark and its literal element is also likely to cause initial interest confusion among consumers and potential consumers of Midnight Express's boats, who are drawn to the Infringing Domain Name and the Infringing Website by the Registered Mark before encountering the Infringing Website's disparaging content.

117. Gregory Kiley's use of the Registered Mark and its literal element constitutes trademark infringement under 15 U.S.C. § 1114.

118. Gregory Kiley's infringement is intentional and willful.

119. Gregory Kiley's intentional and willful infringement has caused, and will continue to cause, damage to Midnight Express in an amount to be proven at trial, and is causing irreparable harm to Midnight Epxress for which there is no adequate remedy at law.

WHEREFORE, Midnight Express requests that the Court grant the relief requested in the Prayer for Relief below.

**COUNT VI**
**UNFAIR COMPETITION – 15 U.S.C. § 1125(a)**
**[Against Gregory Kiley]**

120. Midnight Express incorporates herein each and every allegation set forth in Paragraphs 1 through 78 as if fully set forth herein.

121. Gregory Kiley's use in commerce of the Registered Mark and the literal element thereof, which constitutes the dominant feature of the Registered Mark, is likely to cause confusion, or to cause mistake, or to deceive the relevant public into believing that the Infringing

Domain Name, the Infringing Website, and content displayed thereon are authorized, sponsored, or approved by Midnight Express.

122. The above acts of Gregory Kiley constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

123. As a direct and proximate cause of Gabco's acts of unfair competition, Midnight Express has suffered and will continue to suffer irreparable loss of income, profits, and goodwill.

124. Gregory Kiley's acts of unfair competition will cause further irreparable injury to Midnight Express if Gregory Kiley is not restrained by this Court from further violation of Midnight Express's rights. Midnight Express has no adequate remedy at law.

WHEREFORE, Midnight Express requests that the Court grant the relief requested in the Prayer for Relief below.

**COUNT VII**
**CYBERSQUATTING UNDER THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT – 15 U.S.C. § 1125(d)**
**[Against Michael Newcomer]**

125. Midnight incorporates herein each and every allegation set forth in Paragraphs 1 through 78 as if fully set forth herein.

126. Midnight Express's Midnight Express Mark and Registered Mark are distinctive and were distinctive before Michael Newcomer registered the Infringing Domain Name.

127. The Infringing Domain Name is either identical to or confusingly similar to Midnight Express's Midnight Express Mark and the literal element of the Registered Mark.

128. Michael Newcomer intentionally registered, acquired, trafficked in, and used the Infringing Domain Name, including to divert consumers, dealers, brokers, and others searching for Midnight Express away from Midnight Express's website and internet presence to the Infringing Website, either for commercial gain or with the intent to tarnish or disparage the

Midnight Express Mark and the Registered Mark, and created a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Infringing Website at Infringing Domain Name.

129. Michael Newcomer registered, trafficked in, and used the Infringing Domain Name with a bath faith intent to profit from the Midnight Express Mark and the Registered Mark and their associated goodwill.

130. Michael Newcomer's diversion of traffic from Midnight Express's website has harmed and continues to harm Midnight Express's ability to generate business and retain customers.

131. Michal Newcomer's registration, acquisition, trafficking in, and use of the Infringing Domain Name has caused and will continue to cause damage to Midnight Express, in an amount to be proven at trial, and is causing irreparable harm to Midnight Express, for which there is no adequate remedy at law.

132. As a direct and proximate result of Michal Newcomer's violation of the ACPA, Plaintiff has suffered and continues to suffer injury to its business, reputation, goodwill, and property rights, and Michal Newcomer has obtained and/or sought to obtain an improper commercial benefit from Plaintiff's Mark.

133. Pursuant to 15 U.S.C. § 1117(d), Plaintiff is entitled to statutory damages in an amount determined by the Court, as the Court considers just.

134. Plaintiff is also entitled to appropriate equitable relief under 15 U.S.C. § 1125(d), including an order transferring the Infringing Domain Name to Plaintiff, together with such other relief as the Court deems just and proper.

WHEREFORE, Midnight Express requests that the Court grant the relief requested in the

Prayer for Relief below.

**COUNT VIII**
**FEDERAL TRADEMARK INFRINGMENT – 15 U.S.C. § 1114**
**[Against Michael Newcomer]**

135. Midnight Express incorporates herein each and every allegation set forth in Paragraphs 1 through 78 as if fully set forth herein.

136. The Registered Mark, and the literal element thereof are distinctive, associated with Midnight Express, and identifies Midnight Express as the source of its boats. The Registered Mark was distinctive and signified Midnight Express as the source of its boats before Michael Newcomer registered the Infringing Domain, and the Registered Mark is incontestable and constitutes conclusive evidence of its validity and of Midnight Express's exclusive right to use it in commerce.

137. Michael Newcomer has used and continues to use in commerce, without Midnight Express's consent, reproductions, copies, and colorable imitations of the Registered Mark, including the literal element thereof, that constitutes the dominant feature of the Registered Mark, in the Infringing Domain Name, in the title of the Infringing Website, in the masthead and content of the Infringing Website, and on the Instagram Account such that the use is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the Domain Name, Infringing Website, or Instagram Account.

138. Michael Newcomer's use of the Registered Mark and its literal element is also likely to cause initial interest confusion among consumers and potential consumers of Midnight Express's boats, who are drawn to the Infringing Domain Name and the Infringing Website by the Registered Mark before encountering the Infringing Website's disparaging content.

139. Michael Newcomer's use of the Registered Mark and its literal element constitutes trademark infringement under 15 U.S.C. § 1114.

140. Michael Newcomer's infringement is intentional and willful.

141. Michael Newcomers's intentional and willful infringement has caused, and will continue to cause, damage to Midnight Express in an amount to be proven at trial, and is causing irreparable harm to Midnight Express for which there is no adequate remedy at law.

WHEREFORE, Midnight Express requests that the Court grant the relief requested in the Prayer for Relief below.

**COUNT IX**
**UNFAIR COMPETITION – 15 U.S.C. § 1125(a)**
**[Against Michael Newcomer]**

142. Midnight Express incorporates herein each and every allegation set forth in Paragraphs 1 through 78 as if fully set forth herein.

143. Michael Newcomer's use in commerce of the Registered Mark and the literal element thereof, which constitutes the dominant feature of the Registered Mark, is likely to cause confusion, or to cause mistake, or to deceive the relevant public into believing that the Infringing Domain Name, the Infringing Website, and content displayed thereon are authorized, sponsored, or approved by Midnight Express.

144. The above acts of Michael Newcomer constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

145. As a direct and proximate cause of Michael Newcomer's acts of unfair competition, Midnight Express has suffered and will continue to suffer irreparable loss of income, profits, and goodwill.

146. Michael Newcomer's acts of unfair competition will cause further irreparable injury to Midnight Express if Michael Newcomer is not restrained by this Court from further violation of Midnight Express's rights. Midnight Express has no adequate remedy at law.

WHEREFORE, Midnight Express requests that the Court grant the relief requested in the Prayer for Relief below.

**COUNT X**
**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**[Against all Defendants]**

147. Midnight Express incorporates herein each and every allegation set forth in Paragraphs 1 through 78 as if fully set forth herein.

148. Defendants violated the Florida Unfair and Deceptive Trade Practices Act (Fla. Stat. §501.201, et. seq.), which provides: "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

149. Defendants have attempted to confuse the consuming public through deception and commercialization for their own gain and benefit.

150. Defendants were fully aware of Plaintiff and its trademarks, but nevertheless engaged in the registering, acquiring, trafficking in, and using the Infringing Domain Name, and also publishing false and defamatory statements therein (as well as on the Instagram Account).

151. By engaging in the above-referenced misconduct, Defendants embarked upon a scheme of tarnishing the Plaintiff's brand, and have engaged in unfair and deceptive acts which were all inequitable, improper, and impermissible. Because that misconduct has been knowing, intentional, willful, and deceitful, Defendants are liable for punitive damages under Fla. Stat. §501.201, et. seq.

152. Defendants' knowing, intentional, willful, and deceitful misconduct has also been designed to target Plaintiff. Such misconduct constitutes unfair and/or deceptive acts in trade,

which adversely impacts the public and is capable of repetition, all in violation of Fla. Stat. §501.201, et. seq.

153. Defendants' misconduct has adversely impacted, and continues to adversely impact, the public interest because Defendants have and continue to have the specific intent of damaging the Plaintiff's trademarks (as well as disparaging the Plaintiff's underlying goods sold under those trademarks), thereby leaving the public with fewer choices of goods and services in the relevant industry, and in turn depriving the public of the valuable goodwill, reputation, and brand notoriety that Plaintiff has built up under the Plaintiff's trademarks.

154. Additionally, Defendants' wrongful acts have been committed with the intent, purpose, and effect of procuring an unfair competitive advantage over the Plaintiff (including but not limited to the Ongoing Case), and as a direct and proximate result of Defendants' unlawful acts, Plaintiff has and continues to suffer actual damages in an amount to be established at trial.

WHEREFORE, Midnight Express requests that the Court grant the relief requested in the Prayer for Relief below.

**COUNT XI**
**TRADEMARK INFRINGEMENT**
**UNDER FLORIDA COMMON LAW**
**[Against Gabco]**

155. Midnight Express incorporates herein each and every allegation set forth in Paragraphs 1 through 78 as if fully set forth herein.

156. Midnight Express owns and enjoys common law trademarks in the Midnight Express Mark in Florida, in conjunction with use on goods and services, which are superior to any rights to which Gabco may claim.

157. Gabco has used and continues to use in commerce, without Midnight Express's

consent, reproductions, copies, and colorable imitations of the Midnight Express Mark in the Infringing Domain Name, in the title of the Infringing Website, in the masthead and content of the Infringing Website, and on the Instagram Account such that the use is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the Domain Name, Infringing Website, or Instagram Account.

158. Gabco's use of the Midnight Express Mark is also likely to cause initial interest confusion among consumers and potential consumers of Midnight Express's boats, who are drawn to the Infringing Domain Name and the Infringing Website by the Registered Mark before encountering the Infringing Website's disparaging content.

159. Gabco engaged in, contributed to, and/or induced the acts of trademark infringement alleged herein.

160. Gabco's actions have been intentional and willful.

161. The acts of Gabco have harmed or will harm Midnight Express's reputation, have damaged or will damage Midnight Express and its goodwill, and have created or will create the impression that Midnight Express is an infringer when in fact Gabco is the infringer.

162. Midnight Express has been damaged and will be damaged by the acts of Gabco.

163. The aforesaid acts of Gabco have caused and will continue to cause great and irreparable injury to Midnight Express, and unless said acts are restrained by this Court, they will be continued and Midnight Express will continue to suffer great and irreparable injury.

164. Gabco's aforesaid acts constitute infringement, unfair competition, misappropriation, and misuse of Midnight Express's Midnight Express Mark in Florida, unfair competition, trademark infringement, palming-off, passing-off, and/or reverse passing-off, against Midnight Express, all in violation of the right to express rights at common law and under the law

of the State of Florida.

165. Midnight Express has no adequate remedy at law.

WHEREFORE, Midnight Express requests that the Court grant the relief requested in the Prayer for Relief below.

**COUNT XII**
**UNFAIR COMPETITION**
**UNDER FLORIDA COMMON LAW**
**[Against Gabco]**

166. Midnight Express incorporates herein each and every allegation set forth in Paragraphs 1 through 78 as if fully set forth herein.

167. Midnight Express first adopted and used the Midnight Express Mark in Midnight Express's markets or trade areas, as a means of establishing goodwill and reputation, and to identify particular goods and services sold or offered by Midnight Express and to distinguish them from similar goods and services sold or offered by others.

168. Through its association with such goods, the Midnight Express Mark has, by actual usage, served to identify Midnight Express as the source of the goods.

169. Gabco has commenced use of an identical or confusingly similar trademark in the same trade areas in which Midnight Express has already established its Midnight Express Mark.

170. As a consequence of Gabco's actions, customer confusion as to the sponsorship of the actions of Gabco is likely.

171. Midnight Express has been damaged and will be damaged by the acts of Gabco.

172. The aforesaid acts of Gabco have caused and will continue to cause great and irreparable injury to Midnight Express, and unless said acts are restrained by this Court, they will be continued and Midnight Express will continue to suffer great and irreparable injury.

173. Gabco's aforesaid acts constitute infringement, unfair competition,

misappropriation, and misuse of Midnight Express's Midnight Express Mark in Florida, unfair competition, trademark infringement, palming-off, passing-off, and/or reverse passing-off, against Midnight Express, all in violation of the right to express rights at common law and under the law of the State of Florida.

174. Midnight Express has no adequate remedy at law.

WHEREFORE, Midnight Express requests that the Court grant the relief requested in the Prayer for Relief below.

**COUNT XIII**
**TRADEMARK INFRINGEMENT**
**UNDER FLORIDA COMMON LAW**
**[Against Gregory Kiley]**

175. Midnight Express incorporates herein each and every allegation set forth in Paragraphs 1 through 78 as if fully set forth herein.

176. Midnight Express owns and enjoys common law trademarks in the Midnight Express Mark in Florida, in conjunction with use on goods and services, which are superior to any rights to which Gregory Kiley may claim.

177. Gregory Kiley has used and continues to use in commerce, without Midnight Express's consent, reproductions, copies, and colorable imitations of the Midnight Express Mark in the Infringing Domain Name, in the title of the Infringing Website, in the masthead and content of the Infringing Website, and on the Instagram Account such that the use is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the Domain Name, Infringing Website, or Instagram Account.

178. Gregory Kiley's use of the Midnight Express Mark is also likely to cause initial interest confusion among consumers and potential consumers of Midnight Express's boats, who are drawn to the Infringing Domain Name and the Infringing Website by the Registered Mark

before encountering the Infringing Website's disparaging content.

179. Gregory Kiley engaged in, contributed to, and/or induced the acts of trademark infringement alleged herein.

180. Gregory Kiley's actions have been intentional and willful.

181. The acts of Gregory Kiley have harmed or will harm Midnight Express's reputation, have damaged or will damage Midnight Express and its goodwill, and have created or will create the impression that Midnight Express is an infringer when in fact Gregory Kiley is the infringer.

182. Midnight Express has been damaged and will be damaged by the acts of Gregory Kiley.

183. The aforesaid acts of Gregory Kiley have caused and will continue to cause great and irreparable injury to Midnight Express, and unless said acts are restrained by this Court, they will be continued and Midnight Express will continue to suffer great and irreparable injury.

184. Gregory Kiley's aforesaid acts constitute infringement, unfair competition, misappropriation, and misuse of Midnight Express's Midnight Express Mark in Florida, unfair competition, trademark infringement, palming-off, passing-off, and/or reverse passing-off, against Midnight Express, all in violation of the right to express rights at common law and under the law of the State of Florida.

185. Midnight Express has no adequate remedy at law.

WHEREFORE, Midnight requests that the Court grant the relief requested in the Prayer for Relief below.

**COUNT XIV**
**UNFAIR COMPETITION**
**UNDER FLORIDA COMMON LAW**
**[Against Gregory Kiley]**

186. Midnight Express incorporates herein each and every allegation set forth in Paragraphs 1 through 78 as if fully set forth herein.

187. Midnight Express first adopted and used the Midnight Express Mark in Midnight Express's markets or trade areas, as a means of establishing goodwill and reputation, and to identify particular goods and services sold or offered by Midnight Express and to distinguish them from similar goods and services sold or offered by others.

188. Through its association with such goods, the Midnight Express Mark has, by actual usage, served to identify Midnight Express as the source of the goods.

189. Gregory Kiley has commenced use of an identical or confusingly similar trademark in the same trade areas in which Midnight Express has already established its Midnight Express Mark.

190. As a consequence of Gregory Kiley's actions, customer confusion as to the sponsorship of the actions of Gregory Kiley is likely.

191. Midnight Express has been damaged and will be damaged by the acts of Gregory Kiley.

192. The aforesaid acts of Gregory Kiley have caused and will continue to cause great and irreparable injury to Midnight Express, and unless said acts are restrained by this Court, they will be continued and Midnight Express will continue to suffer great and irreparable injury.

193. Gregory Kiley's aforesaid acts constitute infringement, unfair competition, misappropriation, and misuse of Midnight Express's Midnight Express Mark in Florida, unfair

competition, trademark infringement, palming-off, passing-off, and/or reverse passing-off, against Midnight Express, all in violation of the right to express rights at common law and under the law of the State of Florida.

194. Midnight Express has no adequate remedy at law.

WHEREFORE, Midnight Express requests that the Court grant the relief requested in the Prayer for Relief below.

**COUNT XV**
**TRADEMARK INFRINGEMENT**
**UNDER FLORIDA COMMON LAW**
**[Against Michael Newcomer]**

195. Midnight Express incorporates herein each and every allegation set forth in Paragraphs 1 through 78 as if fully set forth herein.

196. Midnight Express owns and enjoys common law trademarks in the Midnight Express Mark in Florida, in conjunction with use on goods and services, which are superior to any rights to which Michael Newcomer may claim.

197. Michael Newcomer has used and continues to use in commerce, without Midnight Express's consent, reproductions, copies, and colorable imitations of the Midnight Express Mark in the Infringing Domain Name, in the title of the Infringing Website, in the masthead and content of the Infringing Website, and on the Instagram Account such that the use is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the Domain Name, Infringing Website, or Instagram Account.

198. Michael Newcomer's use of the Midnight Express Mark is also likely to cause initial interest confusion among consumers and potential consumers of Midnight Express's boats, who are drawn to the Infringing Domain Name and the Infringing Website by the Registered Mark

before encountering the Infringing Website's disparaging content.

199. Michael Newcomer engaged in, contributed to, and/or induced the acts of trademark infringement alleged herein.

200. Michael Newcomer’s actions have been intentional and willful.

201. The acts of Michael Newcomer have harmed or will harm Midnight Express’s reputation, have damaged or will damage Midnight Express and its goodwill, and have created or will create the impression that Midnight Express is an infringer when in fact Michael Newcomer is the infringer.

202. Midnight Express has been damaged and will be damaged by the acts of Michael Newcomer.

203. The aforesaid acts of Michael Newcomer have caused and will continue to cause great and irreparable injury to Midnight Express, and unless said acts are restrained by this Court, they will be continued and Midnight Express will continue to suffer great and irreparable injury.

204. Michale Newcomer’s aforesaid acts constitute infringement, unfair competition, misappropriation, and misuse of Midnight Express’s Midnight Express Mark in Florida, unfair competition, trademark infringement, palming-off, passing-off, and/or reverse passing-off, against Midnight Express, all in violation of the right to express rights at common law and under the law of the State of Florida.

205. Midnight Express has no adequate remedy at law.

WHEREFORE, Midnight Express requests that the Court grant the relief requested in the Prayer for Relief below.

**COUNT XIV**
**UNFAIR COMPETITION**
**UNDER FLORIDA COMMON LAW**
**[Against Michael Newcomer]**

206. Midnight Express incorporates herein each and every allegation set forth in Paragraphs 1 through 78 as if fully set forth herein.

207. Midnight Express first adopted and used the Midnight Express Mark in Midnight Express's markets or trade areas, as a means of establishing goodwill and reputation, and to identify particular goods and services sold or offered by Midnight Express and to distinguish them from similar goods and services sold or offered by others.

208. Through its association with such goods, the Midnight Express Mark has, by actual usage, served to identify Midnight Express as the source of the goods.

209. Michael Newcomer has commenced use of an identical or confusingly similar trademark in the same trade areas in which Midnight Express has already established its Midnight Express Mark.

210. As a consequence of Michael Newcomer's actions, customer confusion as to the sponsorship of the actions of Michael Newcomer is likely.

211. Midnight Express has been damaged and will be damaged by the acts of Michael Newcomer.

212. The aforesaid acts of Michael Newcomer have caused and will continue to cause great and irreparable injury to Midnight Express, and unless said acts are restrained by this Court, they will be continued and Midnight Express will continue to suffer great and irreparable injury.

213. Michael Newcomer's aforesaid acts constitute infringement, unfair competition, misappropriation, and misuse of Midnight Express's Midnight Express Mark in Florida, unfair

competition, trademark infringement, palming-off, passing-off, and/or reverse passing-off, against Midnight Express, all in violation of the right to express rights at common law and under the law of the State of Florida.

214. Midnight Express has no adequate remedy at law.

WHEREFORE, Midnight Express requests that the Court grant the relief requested in the Prayer for Relief below.

**PRAYER FOR RELIEF**

**WHEREFORE**, Midnight Express prays:

A. That this Court will adjudge that Gabco's conduct has violated the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), infringed upon Midnight Express's rights in the Registered Mark in violation of the Lanham Act, 15 U.S.C. § 1051 et. seq., competed unfairly with Midnight Express in violation of Midnight Express's rights under the Lanham Act, 15 U.S.C. § 1125(a), violated the Florida Deceptive and Unfair Trade Practices Act, infringed upon Midnight Express's trademark rights in violation of Florida Common Law, and competed unfairly with Midnight Express in violation of Florida Common Law.

B. That this Court will adjudge that Gregory Kiley's conduct has violated the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), infringed upon Midnight Express's rights in the Registered Mark in violation of the Lanham Act, 15 U.S.C. § 1051 et. seq., competed unfairly with Midnight Express in violation of Midnight Express's rights under the Lanham Act, 15 U.S.C. § 1125(a), violated the Florida Deceptive and Unfair Trade Practices Act, infringed upon Midnight Express's trademark rights in violation of Florida Trademark and Common Law, and competed

unfairly with Midnight Express in violation of Florida Common Law.

C. That this Court will adjudge that Michael Newcomer's conduct has violated the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), infringed upon Midnight Express's rights in the Registered Mark in violation of the Lanham Act, 15 U.S.C. § 1051 et. seq., competed unfairly with Midnight Express in violation of Midnight Express's rights under the Lanham Act, 15 U.S.C. § 1125(a), violated the Florida Deceptive and Unfair Trade Practices Act, infringed upon Midnight Express's trademark rights in violation of Florida Trademark and Common Law, and competed unfairly with Midnight Epress in violation of Florida Common Law.

D. That this Court, pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65, preliminarily enjoin Defendants, and their officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with any of them, from using, registering, trafficking in, or maintaining the registration of the Infringing Domain Name or any other Internet domain name that incorporates, or is confusingly similar to, the Midnight Express Mark or the Registered Mark and its literal elements.

E. That this Court, pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65, preliminarily and permanently enjoin Defendants, and their officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with any of them, from:

    1. using, registering, trafficking in, or maintaining the registration of the Infringing Domain Name or any other Internet domain name that incorporates, or is confusingly similar to, the Midnight Express Mark or the Registered Mark;

2. using the Midnight Express Mark, the Registered Mark, or any reproduction, copy, or colorable imitation thereof, or any confusingly similar variation thereof, as the name, title, masthead, domain name, metadata, keyword, username, or other source identifier of any website, webpage, or social media account, or otherwise in connection with the advertising, promotion, or sale of any goods or services, including the offering, paying, or otherwise providing of a monetary payment or other consideration through a contest, giveaway, sweepstakes, or similar promotional inducement, to induce any person to view, share, engage with, or drive traffic to the Infringing Website, the Infringing Domain Name, or any website, webpage, social media account, or content that uses the Midnight Express Mark, the Registered Mark, or any reproduction, copy, colorable imitation, or confusingly similar variation thereof;
3. representing, by any means, that Defendants or any website or account operated by them is sponsored, approved, authorized by, or affiliated with Midnight Express, or doing any other act or thing likely to cause the public or the trade to believe that any such connection exists; and
4. transferring, selling, assigning, or modifying the registration of the Infringing Domain Name other than by transfer to Midnight Express, and during the pendency of this action, that the registrar of the Infringing Domain Name be directed to lock the Infringing Domain Name and disable resolution of the Infringing Domain Name to any active website.

F. That this Court, pursuant to 15 U.S.C. § 1125(d)(1)(C), order the transfer of the Infringing Domain Name to Midnight Express.

G. That Defendants be directed to file with this Court and to serve upon Midnight Express, within thirty days after service of any injunction issued in this action, a written report under oath setting forth in detail the manner of compliance with Paragraphs A through F above, including all subparts, pursuant to 15 U.S.C. § 1116(a).

H. That Midnight Express have and recover its actual damages and Defendants' profits arising from Defendants' violations of the Lanham Act, and that the Court enter judgment for such sums, enhanced up to three times the amount of actual damages, pursuant to 15 U.S.C. § 1117(a).

I. That Midnight Express have and recover, at its election made at any time before final judgment, statutory damages pursuant to 15 U.S.C. § 1117(d).

J. That Midnight Express have and recover such sums as are necessary for corrective advertising.

K. That Midnight Express have and recover its reasonable attorneys' fees incurred in this action, pursuant to 15 U.S.C. § 1117(a), and as otherwise authorized.

L. That Midnight Express have and recover its taxable costs and disbursements herein, pursuant to 15 U.S.C. § 1117(a), and as otherwise authorized.

M. That Midnight Express have and recover pre-judgment and post-judgment interest on each and every damage award.

N. That Midnight Express have and recover such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues triable of right by a jury.

Dated: September 16, 2026

/s/Victor A. Bruzos
Jonathan Woodard
Florida Bar No.: 96,553
jwoodard@malloylaw.com
Victor A. Bruzos
Florida Bar No.: 1,049,014
vbruzos@malloylaw.com
**MALLOY & MALLOY, P.L.**
2800 S.W. Third Avenue
Miami, Florida 33129
Telephone (305) 858-8000

*Attorneys for Plaintiff*